UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| IRA GREEN, INC.<br>   Plaintiff,<br><br>v.<br><br>MILITARY SALES & SERVICE CO.,<br>   Defendant. | C. A. No. 10-207-M |

**MEMORANDUM & ORDER**

JOHN J. MCCONNELL, JR., United States District Judge.

The court DENIES Plaintiff Ira Green, Inc.'s Motion to Dismiss Counts I and II of Defendant Military Sales & Service Co.'s Counterclaims, and GRANTS Plaintiff Ira Green, Inc.'s Motion to Dismiss Count III, for reasons discussed below.

**I. PROCEDURAL HISTORY**

On May 26, 2010, Plaintiff Ira Green, Inc. ("Green") filed suit against Military Sales and Service Co. ("MSS") for tortious interference with contract, tortious interference with prospective business relationships, and business defamation. (ECF No. 37 at 6-8.) On April 17, 2012, in MSS's Amended Answer to Green's Amended Complaint raising these claims, MSS raised three counterclaims against Green arising from the same facts and asserting near-identical allegations: tortious interference with contracts, tortious interference with business relationships, and business defamation and intentional damage to business reputation. (ECF No. 78; No. 75 at 15-16.) Green filed a Motion to Dismiss MSS's counterclaims on April 30, 2012. (ECF No. 77.)

II. ANALYSIS

    A.   The factual allegations of Counts I and II are sufficient to state a claim upon which relief can be granted.

The parties dispute whether MSS's allegations of tortious interference with contract and tortious interference with business relationships are factually sufficient such that they "state a claim for relief that is plausible on its face." *W. Reserve Life Assur. Co. of Ohio v. Caramadre*, CA 09-470, 2012 WL 399184 (D.R.I. Feb. 7, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Under Rhode Island law, "to prevail on a claim of tortious interference with contractual relations, a claimant must show '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional interference; and (4) damages resulting therefrom.'" *Tidewater Realty, LLC, v. Rhode Island et al.*, 942 A.2d 986, 993 (R.I. 2008) (quoting *Smith Dev. Corp. v. Bilow Enters., Inc.*, 308 A.2d 477, 482 (1973)).

Here, Green first contends that MSS has not alleged sufficient evidence to establish the existence of a contract with third-party vendors as it "does not identify when any of [the vendors] entered into a contract with MSS. (ECF No. 77-1 at 5.) However, in MSS's counterclaim, MSS references the time frame in which it entered into contracts with third party vendors as "the weeks and months following the finalization of Ira Green Inc's [sic] asset purchase of Brigade Quartermaster," presumably the weeks and months following the January 2010 purchase referenced earlier in the document. (ECF No. 75 at 11-12.) This level of detail is sufficient, as were Green's own allegations of its contracts with third-party vendors and military exchanges, including the Army & Air Force Exchange Service ("AAFES"), alleged to be "after the acquisition" of "[o]n or about January 8, 2010," but not further specified. (ECF No. 37 at 3.)

2

Second, Green contends that MSS has not alleged sufficient facts to satisfy the second requirement to prevail on a claim of tortious interference with contractual relations: knowledge of the contract. (ECF No. 77-1 at 5.) Green alleges that MSS fails to state in its counterclaim that Green "knew" of each of the contracts with third-party vendors, as MSS only states that the vendors "intended to work with MSS." (*Id.* at 5.) First, as MSS points out, under Rhode Island law, "[c]oncrete knowledge by the wrongdoer of the contractual relationship is not required." *DiBiasio v. Brown & Sharpe Mfg. Co.*, 525 A.2d 489, 493 (R.I. 1987). (ECF No. 78 at 6.) *DiBiasio* also states that mere "[k]nowledge of facts that would lead a reasonable person to believe that such a contractual relationship exists may be sufficient." 525 A.2d 489 at 493. In Green's amended complaint, similar language is employed to signal MSS's knowledge of Green's contracts. (*See* ECF No. 37 at 4.) Therefore, it cannot be said that MSS's assertions of its own purported contractual relationships with third party vendors and its allegations that Green knew or had reason to know of these relationships are somehow insufficient. (ECF. No. 75 at 14.)

Third, Green contests whether MSS alleges sufficient facts to state the third element of tortious interference with contractual relations, "intentional interference." (ECF No. 77-1 at 5.) Green asserts MSS fails to allege legal malice and cites case law on the "bona fide claim" defense to the tort: that an alleged tortfeasor who acts "with[] the benefit of any legally recognized privilege or other justification" may defeat liability. (ECF No. 77-1 at 5-6.) (quoting *Alfieri v. Koelle*, C.A. No. 06-510, 2007 WL 966745, at *7 (D.R.I. Mar. 29, 2007). However, binding case law indicates that in order to defeat a claim for tortious interference with contract on a motion to dismiss, the "privilege or other justification" is one of well-documented and unquestioned authority, whether by contract or statute. *See Textron Fin. Corp. v. Ship & Sail,*

*Inc.*, C.A. No. 09-617, 2011 WL 344134, (D.R.I. Jan. 31, 2011) (holding that an existing contract permitting a financial corporation to repossess collateral was "consistent with [the defendant's] authority and thus defeated the claim for tortious interference with contractual relations); *Barkan v. Dunkin' Donuts, Inc.*, 520 F. Supp. 2d 333 (D.R.I. 2007) (holding that the defendants' involvement in plaintiffs' negotiations did not constitute tortious interference where defendants' contract with plaintiffs clearly defined defendants' extensive authority to involve itself in such negotiations); *Tidewater Realty, LLC*, 942 A.2d at 993 (holding that a city exercising its statutory right to purchase property, despite the plaintiff's attempt to purchase the land, was "a good-faith assertion of a claimed...property right" such that it defeated a claim for tortious interference with contractual relations); *Avilla v. Newport Grand Jai Alai LLC*, 935 A.2d 91 (R.I. 2007) (holding that the contractual relationship between the defendant employee and his employer gave the defendant the authority to involve himself in the rehiring of a player under the defendant's supervision, as the defendant would be "held accountable" for the player's performance); *Belliveau Bldg. Corp v. O'Coin*, 763 A.2d 622, 629 (R.I. 2000) (holding that "a rival claimant's good-faith assertion of a colorable property interest, when properly communicated by appropriate means...is privileged and constitutes a defense to a claim of tortious interference with contract" where the defendants originally had a contract with the plaintiffs granting them a colorable property interest in the form of a right of first refusal).

    A defined legal right is not always necessary to demonstrate that an alleged tortfeasor's action is not improper as a matter of law. For instance, in *TalentBurst, Inc. v. Collabera, Inc.*, the court stated "Advancement of one's economic interest...is not an improper motive." 567 F. Supp. 2d 261, 269 (D.Mass. 2008). However, in *TalentBurst, Inc.*, as in cases discussed previously, the rights and obligations of the parties with respect to one another stemmed from an

existing written contract. *Id.* at 264. There does not appear to be a case where the contractual rights of one party, currently the subject of litigation, were sufficient to establish the defense of a bona fide claim. Therefore, it is premature to dismiss MSS's counterclaim based upon what may prove to be a valid defense for Green when Green's own contractual rights have yet to be proven in litigation.

Finally, as to the fourth element of tortious interference with contractual relations, damages, Green contends that MSS has not alleged any loss of its third-party vendor contracts or pled other damages, and that MSS's request to undertake additional discovery demonstrates the lack of damages at this late stage in litigation. (ECF No. 77-1 at 6; No. 79 at 5.) However, MSS clearly alleges that it lost two vendors originally signed with MSS. (ECF No. 78 at 11.) Green's concerns with the language used by MSS aside, losing two contracts is sufficient evidence to plead the existence of damages.

Under Rhode Island law, the elements of tortious interference with business relations are quite similar to the elements of tortious interference with contractual relations: "(1) the existence of a business relationship or expectancy, (2) knowledge by the interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained, and (5) damages to the plaintiff." *Roy*, 525 A.2d 915 (R.I. 1987) (quoting *Mesolella v. City of Providence*, 508 A.2d 661, 669-70 (R.I.1986)).

Here, Green alleges that MSS "does not identify its existing business relationship with AAFES with which [Green] allegedly interfered," but this argument holds little merit. (ECF No. 77-1 at 8.) In its counterclaim, MSS cites its "direct sales model with AAFES," the vendors who "intended to work with MSS on a direct sales basis to AAFES," and that Green "was aware that

[the third-party vendors] intended to sell direct to AAFES with the assistance of MSS." (ECF No. 75 at 12, 14.)

Green also alleges that its actions were "justified," as with the contractual interference claim, but again, the case law merely supports the existence of a justification where circumstances demonstrate an existing legal relationship. *See Roy v. Woonsocket Inst. For Sav.*, 525 A.2d 915 (R.I. 1987) (holding that defendant supervisor's recommendation that plaintiff employee be terminated was based upon plaintiff's "failure to support a management decision," which in the court's eye served as sufficient justification in the context of at-will employment).

Overall, the issues raised by Green regarding the factual sufficiency of the allegations in Count II are defeated for the same reasons as Count I: the pleadings adequately describe facts that, if true, could support an allegation for tortious interference with business relations. MSS's counterclaims fulfill "the primary purpose of pleading, that is, to define with clearness and reasonable certainty the issue to be tried." *Coro Fed. Credit Union v. Correia*, 185 A.2d 106, 107 (1962) (quoting *McGarry v. Rhode Island Mut. Ins. Co.*, 90 R.I. 337, 158 A.2d 156 (1960)).

**B. The one-year statute of limitations for defamation actions in Rhode Island bars Count III.**

Under Rhode Island law, the statute of limitations for defamation is one year. R.I. Gen. Laws §9-1-14(a). Here, the counterclaim alleges defamatory statements in 2010. (ECF No. 75 at 16.) As the counterclaim was filed in 2012, this claim is time-barred and therefore must be dismissed.

The request by MSS for further discovery in order to "determine the full time-frame extent...of Green's defamation" is inappropriate considering the clear indication in the counterclaim that the misstatements made were "in 2010," without any allegations that the

alleged defamation continued into 2011 or included time period within the statute of limitations such that such investigation would be necessary. (ECF No. 75 at 16-17.)

## V. CONCLUSION

For the foregoing reasons, Green's Motion to Dismiss (ECF No. 77-1) Counts I and II of MSS's Counterclaims is DENIED, and Green's Motion to Dismiss Count III of Military MSS's Counterclaims is GRANTED.

IT IS SO ORDERED:

/s/ John J. McConnell, Jr.

John J. McConnell, Jr.
United States District Judge

June 13, 2012